UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSE LEE GONZALES,

        Plaintiff,                 Case No. 1:08-cv-910

v.                                      Honorable Gordon J. Quist

JAKE ERICKSON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

        I.        Factual allegations

Plaintiff is incarcerated in the Baraga Maximum Correctional Facility, but the events giving rise to his complaint occurred at the Michigan Youth Correctional Facility (MYC) and the

Ionia Maximum Correctional Facility (ICF).  In his *pro se* complaint, Plaintiff sues MYC Security Threat Group (STG) Coordinator Jake Erickson; MYC Warden Frank Elo; ICF Resident Unit Manager (RUM) (unknown) Haynie; ICF RUM (unknown) Fate; ICF Assistant Resident Unit Supervisor (unknown) Vroman; ICF Step II Grievance Hearing Officer (unknown) Norwood; Step III Grievance Hearing Officer James Armstrong; Central Facility Administration STG Coordinator Robert Mulvaney; Michigan Department of Corrections (MDOC) Director Patricia Caruso; and MDOC Deputy Director Dennis Straub.

While Plaintiff was incarcerated at MYC he was designated a STG I due to his membership in the Latin Kings gang.  The MDOC defines an STG as "a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners and which, as a discrete entity, poses a threat to staff or other prisoners or to the custody and security of the facility."  MICH. DEP'T. OF CORR., Policy Directive 04.04.113, ¶ A.  Prisoners may be designated as STG I members or STG II members. *Id.* at ¶¶ O-W.  An STG I member may be elevated to an STG II member if he is found guilty of a major misconduct for behavior related to STG activity; currently presents a threat to the safety of staff, other prisoners, or to the order and security of the facility; or is identified as a leader, enforcer or recruiter of an STG. *Id.* at ¶ S. Prisoners who are designated as STG members are subject to a number of restrictions pertaining to security classification, visits, work assignments, attendance at group meetings, and participation in group leisure time activities. *Id.* at ¶¶ X-Y.

On February 17, 2005, Plaintiff was interviewed by Defendant Erickson regarding his STG status.  During the meeting, Plaintiff signed an STG renunciation form for purposes of having his STG designation removed.  However, on February 22, Erickson informed Plaintiff that the STG designation would not be removed because Defendant Elo believed that Plaintiff was still "gangbanging."  On March 7, 2005, Erickson informed Plaintiff that he was being designated an

STG II as a result of information received from a prisoner informant that Plaintiff was a leader of the Latin Kings. As a result of his STG II designation, Plaintiff was transferred to ICF, a security level V facility.[1] Plaintiff claims that he was designated an STG II based upon false information and sent several kites to Defendant Haynie to resolve the matter. He also filed a grievance challenging his STG II designation. Plaintiff's grievance was denied by Defendants Vroman and Fate at Step I, by Defendant Norwood at Step II and by Defendant Armstrong at Step III. Plaintiff claims that he was designated an STG II in violation of his federal due process rights, MDOC policy and Michigan law.

Under the STG policy, prisoners designated as STG II members are subject to the following restrictions: housed only at security level V; limited to two non-contact visits per month, excluding attorney and clergy visits; classification to a work or school assignment only as approved by the MDOC Deputy Director; attendance at meetings of prisoner groups is prohibited, except for religious services; participation in group leisure time activities is prohibited, except for yard; and out-of-cell movement cannot exceed a total of one hour per day, excluding out-of-cell movement for showers, meals, work and school assignments, religious services, law library, group counseling or therapy and attorney/clergy visits. MICH. DEP'T. OF CORR., Policy Directive 04.04.113, at ¶ Y. In addition, Plaintiff alleges that as an STG member, he will not receive meaningful consideration by the parole board. Plaintiff contends that the conditions of his confinement resulting from his STG II designation violate his Eighth Amendment rights.

Plaintiff also alleges that "Defendants have a fraudulent pattern or practice of discriminatory arbitrary and capriciously [sic] following a "Subjective Standard" of designating a "Spanish Speaking Person" **Latino**, without any objective criterion. Resulting in illegal unlawful,

---

[1] The categories of security classification in MDOC institutions are levels I though V and segregation. Level I is the least secure and segregation is the most secure. *See* MICH. DEP'T. OF CORR., Policy Directive 05.01.130, ¶ B.

- 3 -

unconstitutional, and an unwarranted exercise of discretion." (Compl., ¶ 28, docket #1) (emphasis in original).

For relief, Plaintiff seeks removal of his STG designation and re-classification to security level I or II, as well as compensatory damages of $750,000 and punitive damages of $1,600,000 from each of the Defendants.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     **Failure to allege unconstitutional behavior**

Plaintiff fails to make any specific factual allegations against Defendants Caruso and Straub. In addition, Plaintiff fails to make specific factual allegations against Defendants Vroman, Fate, Norwood and Armstrong, other than his claim that they denied or failed to adequately address his grievances. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to demonstrate that Defendants Caruso, Straub, Vroman, Fate, Norwood and Armstrong engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them. For the reasons set forth below, the Court finds that Plaintiff also fails to state a claim against the remaining Defendants.

### B.     **Due Process**

Plaintiff claims that he was designated an STG II in violation of his due process rights. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An increase in security classification does not constitute an "atypical and significant" hardship in relation to the ordinary incidents of prison life

because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"); *but see Wilkinson v. Austin*, 545 U.S. 209 (2005) (holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline" because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio"). The Sixth Circuit specifically has held that a Michigan prisoner's STG designation did not implicate the Due Process Clause because it does constitute an "atypical and significant" hardship. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); *Ford v. Martin*, 49 F. App'x 584, 586 (6th Cir. 2002); *Garrison v. Corr*, 26 F. App'x 410, 412 (6th Cir. 2001). Because he has no liberty interest at stake, Plaintiff fails to state a due process claim arising from his STG II designation.

        C.     **Equal Protection**

Plaintiff also claims that "Defendants have a fraudulent pattern or practice of discriminatory arbitrary and capriciously [sic] following a "Subjective Standard" of designating a "Spanish Speaking Person" **Latino**, without any objective criterion. Resulting in illegal unlawful, unconstitutional, and an unwarranted exercise of discretion." (Compl., ¶ 28, docket #1) (emphasis in original). Plaintiff's allegations suggest that he was designated an STG member merely because

he is a Spanish-speaking Latino. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are wholly conclusory. He alleges racial discrimination without any factual support whatsoever. According to his own allegations, prison officials received information that Plaintiff was a leader of the Latin Kings. While Plaintiff disputes the veracity of that information, it demonstrates that Plaintiff was not designated an STG simply because he is Latino. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).

D. **Eighth Amendment**

Plaintiff further claims that the conditions of confinement for STG II prisoners constitute cruel and unusual punishment. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

The conditions of confinement imposed on Plaintiff as a result of his STG II membership do not rise to the level an Eighth Amendment violation. Even if Plaintiff was being held under the same conditions as segregation, the highest security level classification, his claim must fail. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Harbin-Bey*, 524 F.3d at 795; *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). Although it is clear that Plaintiff is denied certain privileges as a result of his STG II designation, he does not allege or show that he was denied basic human needs and requirements. Moreover, Plaintiff cannot not bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harbin-Bey*, 524 F.3d at 795-96; *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145-46 (6th Cir. 2002); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000). As such, Plaintiff fails to state an Eighth Amendment claim against Defendants.

E.   **State Law Claims**

Plaintiff also claims that Defendants violated MDOC policy and state law when they designated him an STG II member. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir.

1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687 at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  December 5, 2008                                /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE